

PRICE DANIEL
ATTORNEY GENERAL

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

January 13, 1948

Hon. Bascom Giles          Opinion No. V-475
Commissioner of the
General Land Office     Re: Does a State lease with
Austin, Texas               a reservation of "7/48th
                            of the gross production
                            of gas, or the value of
                            same" reserve royalty
                            from the gross production
                            of gas or royalty only
                            from that portion of the
                            gas produced and sold off
                            the lease? And a related
                            question.

Dear Sir:

    Your recent letter requesting the opinion of this department reads as follows:

    "There is attached hereto a photostatic copy of Mineral Lease No. 20001, covering 640 acres in Tract No. 264, located in Chambers and Galveston Counties.

    "Provision No. 3 of said lease reads as follows:

    "3. When production of oil, gas or other minerals covered by this lease is secured the owner shall pay to the Commissioner of the General Land Office, at Austin, Texas, for the use and benefit of the State of Texas, 7/48ths. of the gross production of oil, or the value of same, that may be produced and saved, and 7/48ths. of the gross production of gas, or the value of same, and 1/8th of the gross production of sulphur or the value of same, that may be produced and sold off the area, and one-sixteenth of the value of all other minerals, that may be produced and an additional payment of $65,000.00 out of the 1/4th. of 41/48ths. of the gross oil produced and saved from said tract.

"Your official opinion is respectfully requested as to:

"1.  Do the provisions outlined above entitle the State to receive royalty from the gross production of gas, or is the State's royalty due to be calculated on that portion of the gas produced and sold off the lease?

"2.  Is the operator indebted to the State of Texas for royalty on gas used on the premises, or in the development of the lease?"

The mineral lease referred to "was duly advertised under provisions of Chapter 271, Act approved May 29, 1931." This Act is H. B. 358, Acts 1931, 42nd Legislature, Regular Session, p. 452, ch. 271 (Art. 5421c, V.C.S.) and provides in Section 10 thereof that:

"Sec. 10.  Terms of Lease.--The areas included herein shall be leased for a consideration, in addition to the case amount bid therefor, of not less than one-eighth (1/8) of the gross production of oil, or the value of same, that may be produced and saved, and not less than one-eighth (1/8) of the gross production of gas, or the value of same, and not less than one-eighth (1/8) of the gross production of sulphur, or the value of same that may be produced and sold off the area, and not less than one-sixteenth (1/16) of the value of all other minerals that may be produced, and an additional sum of twenty-five cents an acre per year for each year thereafter until production is secured. . . ."

The mineral lease you submit embodies mineral reservations identical in terms (except for the amount) to those minimum mineral reservations required by the Statute, supra. We shall construe the mineral reservations of this lease, therefore, by construing those minimum mineral reservations in the Statute. For in this case the provisions of the lease, paralleling those minimum mineral reservations of the Statute, should be governed by the Statute.

Section 10, supra, provides distinct and independent minimum royalty reservations for each type of

mineral reserved.  These minimum mineral reservations
are as follows:

      1.  "One-eighth (1/8) of the gross pro-
duction of oil, or the value of same, that
may be produced and saved, and not less than

      2.  "One-eighth (1/8) of the gross pro-
duction of gas, or the value of same, and
not less than

      3.  "One-eighth (1/8) of the gross pro-
duction of sulphur, or the value of same that
may be produced and sold off the area, and
not less than

      4.  "One-sixteenth (1/16) of the value
of all other minerals that may be produced
. . ."  (Emphasis added)

The particular punctuation and wording of this
provision of the Statute clearly indicates that the con-
dition "and sold off the area" embodied in the royalty
reservation of "sulphur" is not intended as a like con-
dition on the royalty reservation of "gas."  The royalty
reservations are independent and distinct.  This con-
struction is emphasized by the differentiating condi-
tions provided in each mineral reservation.

By the provision of the express condition in
the reservation of "oil," that it is to be a royalty re-
servation of "oil" produced and "saved"; and similarly
by the provision of the express condition in the reser-
vation of "sulphur," that it is to be a royalty reser-
vation of "sulphur" produced "and sold off the area," we
may infer that it was the intention of the Legislature
to reserve to the State in the case of "gas" a minimum
of "(1/8) of the gross production of gas" without con-
dition that it be of that gas "sold off the area" or of
that gas "saved."  The expressed condition in the "sul-
phur" and "oil" reservations preclude the implication of
like conditions in the "gas" reservation.  See City of
Corpus Christi v. McMurrey (Civ. App. 1936), 90 S. W.
(2d) 868, 870.

Furthermore, words used in a statutory enact-
ment should be given their ordinary meaning, as the Leg-
islature must be presumed to have used them in that sense
in which they are ordinarily understood.  Turner v. Cross

(Sup. Ct. 1892), 18 S. W. 578, 579; Greenwood v. City of El Paso (Civ. App. 1945) 186 S. W. (2d) 1015, 1017.

Debate as to the intention of the Legislature is concluded by the use and meaning of the word "gross" in the royalty reservation of "gas." Webster's New International Dictionary, Second Edition, Unabridged (1938) defines "gross" as the "Whole; entire; total . . . opposed to net. The gross earnings, receipts or the like . . . without any deductions." There can be no ambiguity therefore with respect to the meaning of the phrase "gross production." The State is to receive "7/48ths" of the "entire" production of gas, regardless of what is sold "off the area," and "without any deductions" for gas used on the premises or in the development of the lease.

### SUMMARY

Where a State lease reserves "7/48ths of the gross production of gas, or the value of same" as royalty, the State is to receive "7/48ths" of the entire production of gas, regardless of what is sold off the area, and without any deductions for gas used on the premises or in the development of the lease.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    *Elton M. Hyder, Jr.*
    Elton M. Hyder, Jr.
    Assistant

EMH:bb:wb:jt

APPROVED:

*Price Daniel*
ATTORNEY GENERAL